

**EXHIBIT 3**

**Littler Mendelson, PC**
815 Connecticut Avenue, NW
Suite 400
Washington, DC  20006-4046

Patricia Donkor
202.772.2512 direct
202.842.3400 main
202.207.1180 fax
pdonkor@littler.com

By E-mail: tim@clintonpeed.com

May 12, 2020

Tim Clinton
CLINTON & PEED
777 6th Street NW, 11th Floor
Washington, DC  20001

Re:   *Harold Stanley Jackson v. Starbucks*, 1:19-CV-01487

Dear Mr. Clinton:

Starbucks is in receipt of your letter, dated March 18, 2020.  We appreciate your patience as we with work within the limitations of the pandemic to determine whether Starbucks has any additional information which we might produce in an effort to resolve this dispute.

Below, we address the issues which are raised in your March 18, 2020 letter.

**A. Reproduction of Starbucks Corporation's production with natives and load files preserving all metadata and text.**

In your letter, you request the native format for every document Starbucks produced, although you admit that the instructions in your Request for Production of Documents stated that pdf productions were acceptable.  Starbucks produced thirteen documents in its original production:  1) A computer generated incident report; 2) six Starbucks policies: i) Safety Guide - U.S. Store Edition – 2011; ii) Camera Naming Convention and Field of View Standards; iii) Equal Employment Opportunity Policy - U.S. Only - Oct. 2017; iv) Corporate Docs\Handbooks, Policies, & Guides; v) Partner Guide - U.S. Store Edition – 2011; vi) and Partner Guide - U.S. Store Edition – 2017; 3) External E-mail from Chelsea Robinson to Oshinowo, Posi; 4) Gelman Library Store Customer complaints; and 5) personnel files for Dan White-Hunt, Chelsea Robinson, and Richard Washington.

Tim Clinton
CLINTON & PEED
May 12, 2020
Page 2

The policies Starbucks produced are copies of internally created documents. They are regularly reproduced and distributed within the Corporation. They cannot be produced in native form. You note that Starbucks provided two Microsoft Excel documents. While you are correct that it produced two excel documents, you are mistaken about their contents. The first Excel document contained customer complaints from the Gelman Library store. On May 11, 2020, undersigned counsel sent to you and you accessed the reproduced native format of the customer complaints. Thus, this concern is moot. The other Excel document that you appear to be referencing is the cover sheet of Mr. Washington's personnel file, which appears to also have been created in Microsoft Excel. That document is a single row Excel sheet, containing biographical information about Mr. Washington, such as his full name, date of birth, and address. It serves as a cover sheet. The personnel file contains a copy of that Excel sheet, and we are unable to produce it in its native form.

Regarding the email from Chelsea Robinson and the Incident report, we note that our standard form of production of electronically stored information ("ESI") is either: (a) searchable PDF or (b) single-page, black-and-white Group IV TIFF files with a Coencordance .DAT load file that contains full extracted text and metadata fields (to the extent available); except that non-redacted Excel, multi-media (*i.e.*, audio or video), and PowerPoint files may be produced in their native format.

Starbucks is under no obligation to re-produce information previously produced in a reasonably usable format. TIFFs and searchable PDFs are widely recognized by the courts as the most commonly used form of production and is a presumptively "usable form." *See In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 88 (D. Conn. 2005) (Denying motion to compel native production and instead ordering production "in TIFF or PDF form with Bates numbering and appropriate confidentiality designations" in part because "TIFF or PDF format [was] the most secure format for production of documents" and in part because TIFF/PDF productions would allow "information [to] be easily identified").

Moreover, the federal rules are clear that a party need not produce the same ESI or identical information in more than one format. *See* Fed. R. Civ. P. 34(a)(b)(2)(E)(iii) ("A party need not produce the same electronically stored information in more than one form."); *see also* The Sedona Principles, Third Edition, Principle 12, Comment 12.d., p. 184.

Here, Plaintiff's request for a native production is unreasonably cumulative and duplicative of information already produced to Plaintiff. *See* Fed. R. Civ. P. 26(b)(2)(C). For these reasons, Defendant will not re-produce either of the files in native format. However, Defendant will produce the metadata associated with the Chelsea Robinson statement previously produced.

Tim Clinton
CLINTON & PEED
May 12, 2020
Page 3

### B. Starbucks has not withheld any documents or information based upon its stated objections.

As previously discussed, Starbucks disagrees that it waived its objections to Plaintiff's Request for Production of Documents. From August 2019 to January 2020, the parties were actively working to resolve the matter through early mediation and informally agreed that they would devote resources and attention to potentially settling the matter in lieu of expending resources on discovery. Accordingly, time and fees were not incurred in responding to discovery while Starbucks attempted in good faith to resolve this matter. Starbucks did however produce information, such as the surveillance footage and incident reports, voluntarily to facilitate the mediation.

That being said, Starbucks clarifies whether it has withheld documents based on its stated objections.

> **Plaintiff's Request for Production of Documents No. 3:** The personnel files of any person working at the Store on April 24, 2018.

Starbucks objected to Request No. 3 and explained it would limit its production as follows:

> The personnel files of employees that did not interact with Plaintiff are irrelevant to any claims or defenses in this matter. Subject to and without waiving its objections, pursuant to Fed. R. Civ. P. 34(b)(2)(C), Starbucks will produce personnel files for Richard Washington, Chelsea Robinson, and Dan White-Hunt, only.

Starbucks stands by its objections. However, without waiving the asserted objections, Starbucks will produce the personnel files of all partners that worked at the Gelman Library store on April 24, 2018. Starbucks is in the process of gathering those files in a remote working environment, and will provide them to you when they are available.

> **Plaintiff's Request for Production of Documents No. 5:** All employee training materials, including manuals, instructional materials, emails, and other documents.

Starbucks objected to Request No. 5 and explained it would limit its production as follows:

> Subject to and without waiving its objections, pursuant to Fed. R. Civ. P. 34(b)(2)(C), Starbucks produces policies governing employee conduct, diversity, safety and security that were in place on April 24, 2018. Starbucks will not produce stand-alone policy documents governing Starbucks' non-United States stores, or any other policies or materials unrelated to employee conduct or discrimination/anti-discrimination.

Tim Clinton
CLINTON & PEED
May 12, 2020
Page 4

Starbucks stands by its objections and specified limitations. It has produced responsive documents in accordance with the stated limitations and has not withheld any responsive documents. In the event additional responsive documents are discovered, Starbucks will supplement this response in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

> **Plaintiff's Request for Production of Documents No. 6:** All documents related to discrimination or nondiscrimination, by the Store or its employees, on the basis of race, religion, ethnicity, personal appearance, or nationality.

Starbucks objected to Request No. 6 and explained it would limit its production as follows:

> Subject to and without waiving its objections, pursuant to Fed. R. Civ. P. 34(b)(2)(C), Starbucks produces policies governing employee conduct, diversity, safety and security that were in place on April 24, 2018. Starbucks will not produce stand-alone policy documents governing Starbucks' non-United States stores, or any other policies or materials unrelated to employee conduct or discrimination/anti-discrimination.

Starbucks stands by its objections and specified limitations. It contends that it has produced all responsive documents in accordance with the stated limitations and has not withheld any responsive documents. To the extent this request seeks complaints of discrimination by customers against store employees, Starbucks does not possess any responsive documents.

> **Plaintiff's Request for Production of Documents No. 7:** All documents relating to complaints by customers or fellow employees against any employee who was on duty at the Store on April 24, 2018.

Starbucks objected to Request No. 7 and explained it would limit its production as follows:

> Subject to and without waiving its objections, pursuant to Fed. R. Civ. P. 34(b)(2)(C), Starbucks will produce a history of customer complaints at the GW Store from May 26, 2017, through May 17, 2019.

Starbucks stands by its objections and specified limitations. It has produced all responsive documents in accordance with the stated limitations and has not withheld any responsive documents. Starbucks further responds as follows, the requested information is maintained in Starbucks' database. The report it produced on March 6, 2020, and then reproduced on May 11, 2020, were produced from that database.

Tim Clinton
CLINTON & PEED
May 12, 2020
Page 5

>**Plaintiff's Request for Production of Documents No. 8:** All documents relating to complaints by customers or fellow employees against any other Store employee.

Starbucks objected to Request No. 8 and explained it would limit its production as follows:

>Subject to and without waiving its objections, pursuant to Fed. R. Civ. P. 34(b)(2)(C), Starbucks will produce a history of customer complaints at the Gelman Library, GWU Store from May 26, 2017, through May 17, 2019.

Starbucks stands by its objections and specified limitations. It has produced all responsive documents in accordance with the stated limitations and has not withheld any responsive documents. In the event additional responsive documents are discovered, Starbucks will supplement this response.

>**C. Starbucks Corporation's interrogatory responses are evasive or incomplete.**

As previously discussed, Starbucks disagrees that it waived its objections to Plaintiff's Interrogatories. From August 2019 to January 2019, the parties were actively working to resolve the matter through mediation and informally agreed that they would devote resources and attention to potentially settling the matter in lieu of expending resources on discovery. Accordingly, time and fees were not incurred in responding to discovery while Starbucks attempted in good faith to resolve this matter. Starbucks did however produce information, such as the surveillance footage and incident reports, voluntarily to facilitate the mediation.

That being said,, Starbucks addresses your comments regarding its Interrogatory Responses.

>**Plaintiff's Interrogatory No. 1:** Identify each employee working at the Store at any time during the period from January 1, 2018 through June 30, 2018.

Starbucks responded as follows:

>Starbucks objects to this Interrogatory on the grounds that it improperly seeks the disclosure of information that is neither material, necessary, relevant to the subject matter of this action, nor proportional to the needs of the case. The identities of employees that were not present on the date of the incident is irrelevant to whether Plaintiff's account of the incident is any more or less likely. Starbucks will only provide a roster of employees that worked at the store on the date in question, April 24, 2018. Starbucks withholds the identities of employees that did not work at the store on the date of the incident.

Tim Clinton
CLINTON & PEED
May 12, 2020
Page 6

Starbucks stands by its objections and specified limitations. In addition to the stated objections, Starbucks responds as follows: The Gelman Library Starbucks Store, set on George Washington University's campus, employs an average of forty-two partners monthly with an approximate turnover rate of 60%. The majority of partners are part-time students. Identifying each employee that worked at the store over a six-month period is unduly burdensome and disproportionate to the needs of this case.

> **Plaintiff's Interrogatory No. 3:** Identify the number and placement of each security camera in the Store from January 1, 2018 until April 30, 2018, along with any changes to the number or placement of such cameras during that time.

Starbucks responded as follows:

> The store follows the Camera Standards and Naming Conventions Reference Guide. All stores aim to have the suggested number of cameras and mount cameras as close as practically possible to the recommendations contained in Guide. However, all camera placement is subject to the limitations of the configuration of each individual store. The Reference Guide is attached as Bates No. STARBUCKS0000812-STARBUCKS0000820. For security reasons, the document must remain confidential pursuant to the February 7, 2020, Protective Order [Docket #16].

Starbucks adds to its response as follows: Starbucks objects to this Interrogatory on the grounds that it improperly seeks the disclosure of information that is neither material, necessary, relevant to the subject matter of this action, nor proportional to the needs of the case. The location of the store's security cameras before and after April 24, 2018, are irrelevant to the claims and defenses in this matter. Subject to the foregoing objections: the Store had four active security cameras on April 24, 2018, located at 1) the point of sale; 2) the safe; 3) store entry; and 4) cash handling (cash register).

**Plaintiff's Interrogatory No. 5:** Identify your policies and procedures with respect to diversity training.

Starbucks responded in part as follows:

> Subject to and without waiving its objections, pursuant to Fed. R. Civ. P. 33(d), Starbucks refers Plaintiff to the policies governing employee conduct, diversity, safety and security that were in place on April 24, 2018. Starbucks will not produce stand-alone policy documents governing Starbucks' non-United States stores, or any other policies or materials unrelated to employee conduct or discrimination/anti-discrimination.

Tim Clinton
CLINTON & PEED
May 12, 2020
Page 7

Starbucks stands by its objections and specified limitations. It has diligently searched for, identified and produced responsive documents in accordance with the stated limitations and has not withheld any responsive documents. In the event additional responsive documents are discovered, Starbucks will supplement this response in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

**Plaintiff's Interrogatory No. 6:** Identify your policies, if any, with respect to permitting customers to pick up retail items while waiting in line to pay for them. In answering this Interrogatory, please identify each of the circumstances, if any, in which a customer should (or would) be told not to touch a retail item until after it has been purchased.

Starbucks responded in part as follows:

> Starbucks does not have a specific policy regarding the purchase of retail items while waiting in line to pay for them.

Starbucks stands by its objections and specified limitations. It further notes that it responded to this Interrogatory and informed you that it has no such policy.

### D. Starbucks Corporation's responses to Plaintiff's document requests are incomplete.

In your letter, you make the baseless assertion that Starbucks has provided incomplete responses to certain Requests for Production of Documents. As discussed below, Starbucks has provided complete responses to Plaintiff's requests based on the information currently in its possession.

**Plaintiff's Interrogatory No. 2:** All communications discussing Plaintiff Harold Jackson (whether or not he is identified by name) or the events described in the Complaint.

Starbuck responded as follows:

> Starbucks Incident Report, Bates Nos. STARBUCKS0000216 - STARBUCKS0000219; Bates No. STARBUCKS0000220.

With respect to Starbucks Corporation's response to Request for Production of Document No. 2, you contend:

Tim Clinton
CLINTON & PEED
May 12, 2020
Page 8

> It appears obvious to us that, at a minimum, Ms. Robinson's statement was made elsewhere in writing, at some other time, and copied and pasted in an email to Mr. Oshinowo. We are entitled to those earlier communications from Ms. Robinson. It also seems highly unlikely that there were no other emails, memoranda, letters, or other forms of communication related to this incident that were either prompted by the incident itself, by Starbucks' May 1, 2018 receipt of our letter (*see* ROG #2), or by the filing of the Complaint.
>
> You have not asserted any privilege objections (putting aside whether they have been waived for your inexcusable delay), nor have you produced a privilege log. (You did note that "inadvertent production of any privileged documents" would not "constitute a waiver of any applicable privilege," but did not actually assert any privilege or claim that any responsive documents would be subject to any privilege.)

Plaintiff's assumptions here are incorrect. Ms. Robinson prepared and sent her statement as an email to Mr. Oshinowo. The statement does not exist elsewhere. Next, on December 19, 2019, Starbucks sent a preservation notice to partners asking that they preserve all responsive documents. Starbucks will produce the litigation hold notice. Finally, from your letter, it appears that you may be interested in communications between Starbucks and inside or outside counsel. Starbucks did not initially interpret your request to seek attorney-client communications. To the extent that you do seek attorney-client communications, Starbucks objects on the basis that those communications are protected by attorney client privilege and limits its response to Document Request No. 2 to communications that are not between Starbucks and inside or outside counsel, or that would be protected by the attorney work-product privilege. Subject to the stated limitations, Starbucks has no additional responsive documentation.

Further responding to your letter, as stated above, Starbucks will supplement its response to Document Request No. 3, with personnel files for all partners employed at the Gelman Library on April 24, 2018. Regarding Request for Production of Documents No. 6, as stated above, Starbucks stands by its objections and specified limitations. It contends that it has produced all responsive documents in accordance with the stated limitations and has not withheld any responsive documents. To the extent this request seeks complaints of discrimination by customers against store employees, Starbucks does not possess any responsive documents.

Finally, you take issue with redactions in Starbucks Corporations' responsive materials, such as the redaction of Chelsea Robinson's personal e-mail address. Starbucks will not unredact confidential information of its current or former partners or customers. *See, e.g., Dutcher v. Bold Films LP*, Case No. 2:15–cv–110–DB–PMW, 2017 WL 1901418 (May 8, 2017); *In re Takata Airbag Prod. Liab. Litig.*, 14-24009-CV, 2016 WL 1460143 (S.D. Fla. Mar. 1, 2016) (permitting

Tim Clinton
CLINTON & PEED
May 12, 2020
Page 9


certain relevancy redactions where the documents contained sensitive materials that, if exposed to the public, would have been harmful).

We remain willing and available to engage in good-faith discussions to address any concerns that you may have.


Sincerely,

/s/
Patricia Donkor
Associate

PD

Cc: Alison Davis