**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| HAROLD STANLEY JACKSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 19-1487 (RC) |
| | : | |
| v. | : | Re Document No.: 32 |
| | : | |
| STARBUCKS CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANT DAN WHITE-HUNT'S MOTION TO DISMISS AMENDED COMPLAINT

## I. INTRODUCTION

Plaintiff Harold Stanley Jackson brings this action against Starbucks Corporation

("Starbucks"), and local Starbucks manager Dan White-Hunt (collectively, "Defendants").  He

contends that Defendants discriminated against him based on his race and personal appearance,

when, on April 24, 2018, he was verbally and physically accosted by a Starbucks staff member

while attempting to make a purchase at a local Starbucks located in Foggy Bottom.  He now

asserts a number of claims against Defendants, including common law negligent supervision,

aiding and abetting battery, and race and personal appearance discrimination under the D.C.

Human Rights Act ("DCHRA"), D.C. Code § 2-1402.31 and race discrimination under 42 U.S.C.

§ 1981 ("Section 1981").  White-Hunt has moved to dismiss the claims against him in their

entirety.  For the reasons stated below, White-Hunt's motion to dismiss will be granted in part

and denied in part.

## II.  FACTUAL BACKGROUND

### A.  The Incident at Starbucks

The Court summarizes the relevant facts as alleged in Jackson's amended complaint, assuming, as it must when considering a motion to dismiss for failure to state a claim, the "truth of all well-pleaded factual allegations . . . and construes reasonable inferences from those allegations in the plaintiff's favor."  *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014).

The basis for this suit concerns an alleged altercation that occurred between Jackson, an African American man and Starbucks customer, and various Starbucks employees.  Jackson entered the Starbucks located at 2130 H Street, NW, Washington D.C. on the afternoon of April 24, 2018.  Am. Compl. ¶¶ 15–17, ECF No. 22.  After picking up a small package of pre-wrapped madeleine cookies from the counter, he started to walk towards the end of the line of customers waiting to make their purchase.  *Id.* ¶¶ 1, 18.  At this time, the Starbucks cashier, Richard Washington, said to Jackson something to the effect of "Sir, you're not supposed to touch those" or "Sir, you have to pay for those."  *Id.* ¶ 19.  Jackson responded by saying, "What, do you think I'm going to steal it?"  *Id.* ¶ 20.  Washington continued to insist that Jackson return the cookies to the shelf, at which point Jackson asked to speak to a manager.  *Id.* ¶ 21.  Jackson then had a brief, roughly two-minute conversation with White-Hunt, the store manager, after which time Jackson walked to the end of the customer line to wait to make his purchase.  *Id.* ¶ 23.

Shortly thereafter, Washington, "a large and physically imposing man" came out from behind the counter and "walked aggressively towards [] Jackson."  *Id.* ¶ 26.  Jackson alleges that he did so "on White-Hunt's instruction or with his encouragement."  *Id.*  White-Hunt followed after Washington.  *Id.* ¶ 27.  Washington then moved White-Hunt out of the way, muttered "he

gotta get out," and pushed Jackson. *Id.* ¶ 28. Jackson responded by telling Washington, "Big man, don't put your hands on me no more," at which point Washington pushed Jackson to the floor. *Id.* As a result of the fall, Jackson briefly lost consciousness and apparently suffered a seizure. *Id.* Within five minutes, medical personnel arrived on the scene and took him to a nearby hospital. *Id.* ¶¶ 32, 34.

Later that day, White-Hunt called a Starbucks reporting line to file an oral incident report of the physical altercation, representing that "[p]olice were not called" and that "[n]obody was injured." *Id.* ¶ 36. He also reported a starkly different situation than the one painted by Jackson in his amended complaint, stating that "[Jackson] shouted at [White-Hunt] using profanity words . . . [White-Hunt then] overheard the customer yell at the front end barista, Chelsie, that he was going to mess her up and yelled at her. . . [a]t that time, another barista, [Washington], approached the customer and advised the customer to leave the premises. [Jackson] got more aggravated and proceeded to attack [Washington]. In defense, [Washington] held the customer back until the campus police arrived . . ." *Id.*

Jackson continues to experience back and neck pain as a result of the incident, and has incurred medical expenses to treat these injuries. *Id.* ¶¶ 59–61. He remains unable to exercise as he used to, and has trouble falling asleep. *Id.* ¶ 62. He also alleges that the resulting physical limitations "have caused substantial mental anguish and frustration," on top of the humiliation he suffered due to his discriminatory treatment by Defendants. *Id.* ¶¶ 61–63.

### B. Procedural History

On April 22, 2019, Jackson filed a complaint against Starbucks and Washington (named as "John Doe") in the Superior Court of the District of Columbia. *See* Superior Court Complaint,

ECF No. 1-4.  A month later, Starbucks removed the matter to this Court.  *See* Notice of Removal, ECF No. 1.

On April 24, 2020, Jackson amended his complaint to remove Washington as a defendant,[1] and added claims against White-Hunt, the store manager on duty at the time of the incident.  As is relevant to the motion before the Court, Jackson now asserts four claims against White-Hunt, including: (1) a claim alleging that White-Hunt's supervision of Washington was negligent, Am. Compl. ¶¶ 67–68, (2) a claim alleging that White-Hunt aided and abetted in Washington's battery, *id.* ¶¶ 73–75, (3) a race and physical appearance claim of discrimination in violation of the DCHRA, *id.* ¶¶ 76–83, and (4) a race discrimination claim in violation of Section 1981.  *Id.*  ¶¶ 84–89.  This Court has original jurisdiction over the claim for race discrimination in violation of Section 1981 and supplemental jurisdiction over each of the other claims pursuant to 28 U.S.C. §§ 1367(a) and 1441(c).  *See* Notice of Removal at 1.

White-Hunt has now filed a motion to be dismissed as a defendant in this case pursuant to Rule 12(b)(6).  Def. Dan White-Hunt's Mot. Dismiss Am. Compl. ("Def.'s Mot."), ECF No. 32.  Jackson opposes this motion, Pl.'s Opp'n to Def. White-Hunt's Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 35, and White-Hunt has filed a reply, Def. Dan White-Hunt's Reply in Further Supp. of Mot. Dismiss ("Def.'s Reply"), ECF No. 37.  The motion is fully briefed and ripe for consideration.

### III.  LEGAL STANDARD

To prevail on a motion to dismiss for failure to state a claim, a plaintiff must provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair

---

[1] According to the parties, Washington, the Starbucks employee who was the direct participant in the altercation with Jackson, passed away while this action was pending.  *See* Def.'s Mot. at 4.

4

notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits, but rather "tests the legal sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim for which relief can be granted. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In considering such a motion, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted).  Additionally, "[i]f the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . ." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

"In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Schl.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## IV.  ANALYSIS

White-Hunt has moved to dismiss all four claims against him for failure to state a claim. He argues that the negligent supervision claim must be dismissed because Jackson has not alleged that White-Hunt had prior knowledge that Washington had a propensity to act aggressively or violently towards customers, Def.'s Mot. at 6–8, that the aiding and abetting battery claim is time-barred, *id*. at 8–10, that Jackson has not plausibly alleged that White-Hunt violated the DCHRA by engaging in race or personal appearance discrimination, *id.* at 12–13, and that Jackson has similarly failed to state a claim that White-Hunt engaged in race discrimination in violation of Section 1981, *id.* at 13–15.  The Court evaluates each argument in turn.

### A.  Negligent Supervision

The Court begins with White-Hunt's argument that Jackson has failed to state a claim of negligent supervision against him.  White-Hunt contends that this claim is deficient in two respects.  First, he notes that Jackson has failed to specifically allege that he was owed any sort of legal duty by White-Hunt.  Def.'s Reply at 4.  Second, he claims that the pleadings lack any allegation, as required, that White-Hunt knew or should have known that his subordinate, Washington, would "behave in a dangerous or otherwise incompetent manner."  Def.'s Mot. at 7. The Court's review of the amended complaint, however, does not reach those same conclusions, and finds that under the "minimal" pleading burden required at this stage Jackson has properly stated a claim of negligent supervision against White-Hunt.

The tort of negligent supervision "allows a plaintiff to hold employers directly liable for their failure to properly supervise their personnel." *James v. Dist. of Columbia*, 869 F. Supp. 2d 119, 121 (D.D.C. 2012); *Griffin v. Acacia Life Ins. Co*., 925 A.2d 564, 575 (D.C. 2007).  To

properly state a negligent supervision claim under District of Columbia law, a plaintiff must establish "that the employer breached a duty to [the] plaintiff to use reasonable care in the supervision . . . of an employee which proximately caused harm to plaintiff." *Phelan v. City of Mount Rainier*, 805 A.2d 930, 940 (D.C. 2002). This requires that the plaintiff show "(1) that [Defendants] 'knew or should have known its employee[s] behaved in a dangerous or otherwise incompetent manner,' and (2) that [Defendants], 'armed with that actual or constructive knowledge, failed to adequately supervise [its employees].'" *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 79 (D.D.C. 2005) (quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613) (D.C. 1985); *District of Columbia v. Tulin*, 994 A.2d 788, 794 (D.C. 2010) (same).

An "essential element" of any negligence claim under District of Columbia law is "[t]he existence of a legal duty." *Simms v. Dist. of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010) (quoting *Dist. of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982)). This requires that a plaintiff "allege facts which show that the defendant breached some legally imposed duty owed to the plaintiff." *Id.* White-Hunt claims that Jackson has omitted this "essential element" here. The Court disagrees. District of Columbia law recognizes that employers "dealing with the public" have a general legal duty "to use reasonable care to select, retain and supervise employees such that they are competent and fit for the work assigned to them." *Newman v. Borders, Inc.*, 530 F. Supp. 2d 346, 350 (D.D.C. 2008) (noting, "[t]he cause of action for negligent supervision recognizes that an employer owes specific duties to third persons based on the conduct of its employees") (citing *Griffin*, 925 A.2d at 575). A liberal construal of the amended complaint shows that this duty can reasonably be inferred from the pleadings. Jackson has alleged that White-Hunt, the manager of a Starbucks store that is open to the public, "failed to exercise reasonable care" in his supervision of Washington by instructing him to come out

from behind the counter and approach Jackson, after which Washington acted in a threatening manner, and pushed Jackson twice.  Am. Compl. ¶ 67.  These facts as plead in the amended complaint are sufficient for the Court to infer that a general legal duty owed to Jackson has been alleged.

White-Hunt also contends that Jackson has failed to state a claim of negligent supervision because Jackson did not allege that White-Hunt knew or should have known that his subordinate, Washington, behaved in a dangerous or otherwise incompetent manner toward Jackson, despite the allegations that he directly witnessed—and even encouraged—the alleged battery. Essentially, he claims that Washington's actions were unforeseeable, and that he had no actual or constructive knowledge of Washington's conduct.  To support this point White-Hunt emphasizes that the amended complaint does not allege that he "had prior notice that Washington could act violently towards customers" in the form of any prior incidents involving Washington in the store, or any indication that Washington had a violent criminal past.  Def.'s Mot. at 8. Consequently, he contends, Jackson is attempting "to hold [him] liable for failing to predict Mr. Washington's alleged intentions seconds before the altercation."  *Id.*

But this ignores what the amended complaint does allege.  Jackson has plead that "on White-Hunt's instruction or with his encouragement" Washington, a "large and physically imposing man" "walked aggressively toward Mr. Jackson" and was followed shortly thereafter by White-Hunt.  Am. Compl. ¶¶ 26–27.  Both men then "confronted" Jackson together.  *Id*. ¶ 28. While White-Hunt was standing directly next to Washington, presumably with a full view and within reach to intervene if needed, Washington proceeded to push Jackson twice.  *Id.*  It was not until the second push that Jackson fell to the floor and suffered his injuries.  *Id.* ¶ 28.  Based on these alleged facts, White-Hunt cannot assert that he did not know that Washington was

behaving in a "dangerous of otherwise incompetent manner."  He is alleged to have directly

witnessed the altercation.  According to the pleadings, he even encouraged Washington to

confront Jackson and engage in the dangerous behavior in question.  *Id.* ¶ 26.  Consequently, the

plain meaning of the notice requirement has been met here.  Furthermore, "armed with this

knowledge" that Washington was instigating a fight with a customer, White-Hunt did nothing.

While the fight may have occurred suddenly, he could have said something or intervened to stop

Washington's actions.  Taken together, these facts as plead are sufficient to state a negligent

supervision claim.[2]

Furthermore, while White-Hunt is correct that few cases in the District of Columbia have

directly addressed whether a negligent supervision claim can be brought when a supervisor only

has contemporaneous notice of a subordinate's dangerous or incompetent action, the courts that

have considered this issue uniformly concluded that such a claim can proceed.  For example, in

*Spicer v. District of Columbia*, the court found that allegations that a prison supervisor "was

negligent in failing to adequately supervise the other officers [on] the night of the incident," and

due to the lack of adequate supervision, "they attacked an inmate and broke his foot," was

sufficient to show that the supervisor "knew or should have known its employee behaved in a

dangerous or otherwise incompetent manner."  916 F. Supp. 2d 1, 3 (D.D.C. 2013).  Similarly, in

*Godfrey v. Iverson*, the D.C. Circuit upheld a jury verdict that found a basketball player liable for

negligently supervising his bodyguard when he failed to "say or do anything to try to stop" his

---

[2] White-Hunt also claims that he cannot be held liable for negligent supervision over
Washington because Washington's conduct was not within White-Hunt's control and managing
physical altercations falls outside of his ordinary job responsibilities.  Def.'s Reply at 4.
However, White-Hunt does not support this assertion with a single authority.  The Court finds
that such an inquiry goes to the merits of the claim (*i.e.*, whether White-Hunt adequately
supervised Washington) and thus is not properly before the Court at the pleading stage.

bodyguard from fighting and injuring the plaintiff in nightclub brawl.  559 F.3d 569, 571 (D.C. Cir. 2009).  The jury had been presented evidence that during the melee, the basketball player had simply stood by and observed the proceedings, and "did not say or do anything to try to stop [his bodyguard] or anyone else from fighting."  *Id.*  Based on this evidence, the jury concluded that this was enough to find that the basketball player "knew or should have known [that his bodyguard] behaved in a dangerous or otherwise incompetent manner."  *Id.*  Moreover, the D.C. Court of Appeals has noted in dicta, (while considering the separate question of the type of predicate act that can properly support a common law claim of negligent supervision), that a "negligent supervision claim predicated on a battery might be pursued under a theory that the employer was negligent *in allowing the battery to happen*."  *Griffin*, 925 A.2d at 575–77 (emphasis added).  This is precisely what Jackson has alleged here—that White-Hunt stood by and allowed the battery to occur.  Taking all of these authorities together, the Court concludes that contemporaneous notice is sufficient to meet the notice requirement of a negligent supervision claim.

As this Court has noted before, the plaintiff's burden at the pleading stage is "minimal." *James*, 869 F. Supp. 2d at 121 (quoting *Hopkins v. Blue Cross & Blue Shield Assoc.*, 2010 WL 5300536, at *7 n.1 (D.D.C. Dec. 21, 2010)).  Viewing the facts in the light most favorable to Jackson, as the Court must, Jackson's pleadings state a claim of negligent supervision against White-Hunt.  Accordingly, the Court denies White-Hunt's motion to dismiss on this claim.

### B.  Aiding and Abetting Battery

White-Hunt argues next that Jackson's battery claim against him, brought under an aiding and abetting theory, must be dismissed because it is time-barred by the relevant statute of limitations.  Def.'s Mot. at 8; *see also* D.C. Code § 12-301(a)(4).  Jackson contends, however,

that his claim can nonetheless proceed because it relates back to the date of his original complaint under Federal Rule of Civil Procedure 15(c). Pl.'s Opp'n at 12–14; *see* Fed. R. Civ. P. 15(c). White-Hunt disputes this assertion, arguing that the original complaint did not provide him with adequate notice such that he knew or should have known that he would be named as a defendant in this suit, but for a mistake on the part of Jackson. Def.'s Reply at 9–11; Pl.'s Opp'n at 14. The Court finds that White-Hunt has the better of the argument, and that the relation-back doctrine cannot properly be applied here.

Within the District of Columbia, claims for aiding and abetting battery must be brought no more than one-year after the "right to maintain the action" begins to accrue. D.C. Code § 12-301(a)(4). In this case, Jackson's right to bring suit began to accrue on April 24, 2018, the date of the alleged altercation. Jackson sought leave to amend to include the new battery claim against White-Hunt on March 6, 2020, over 22 months after the alleged incident, *see* Pl.'s Mot. for Leave to File Amended Complaint, ECF No. 17, and filed his amended complaint on April 24, 2020, a full two years later. *See generally* Am. Compl. Thus, on its face, the battery claim against White-Hunt plainly exceeds the one-year limitations period, making it time-barred.

Under certain circumstances, however, the "relation back" doctrine enables a plaintiff to correct a pleading error by adding a new party and new claims even after the statutory limitation period has expired. *See* Fed. R. Civ. P. 15(c); *United States v. Hicks*, 283 F.3d 380, 387 (D.C. Cir. 2002). Federal Rule of Civil Procedure 15(c) states that allegations in an amended complaint may "relate back" to the date of the original complaint when three conditions are met. First, the claims or defenses asserted in the amended pleading must have "ar[isen] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). This factor is not in dispute here, as the aiding and

abetting battery claim brought against White-Hunt in the amended complaint clearly originates from the same underlying event—the April 24, 2018 altercation at Starbucks—as pled in Jackson's original complaint.  *See* Compl ¶ 2 ("After being pushed by [Washington], Mr. Jackson fell and suffered a seizure; he woke up in the hospital."); *compare with* Am. Compl. ¶ 28 ("As Washington and White-Hunt confronted Mr. Jackson. . . Mr. Washington moved White-Hunt out of the way and said something to the effect of, "he gotta get out," and then pushed Mr. Jackson.").

Second, when an amended complaint names a new defendant, the plaintiff must demonstrate that the new defendant had previously "received such notice of the action" typically within the standard 90-day period for service from the complaint's original filing, so "that [they] will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i).  It appears somewhat likely based on the limited facts before the Court that White-Hunt received the required notice, given that the original suit was against one of his employees and his corporate employer, and concerned an incident to which he was a witness and occurred at the small store he was responsible for managing.  White-Hunt was also sent an evidence-preservation letter from Jackson's counsel shortly after the incident, asserting Jackson's belief the incident was "the result of a company-wide practice of discrimination" which plausibly could have put White-Hunt on notice regarding future litigation.  Am. Compl. ¶¶ 37–38; Pl.'s Opp'n at 13.  Cutting against any notice this provided, however, is the fact that the letter was a sent almost a full year before the original complaint was filed.  Additionally, "Rule 15(c) requires notice of the actual institution of the action[,] not mere notice that an action might ensue."  *Grigsby v. Johnson*, No. 95-cv-213, 1996 WL 444052, at *5 (D.D.C. May 14, 1996); *see also Aslanidis v. U.S. Lines, Inc.*, 7 F. 3d 1067, 1076 (2d Cir. 1993) ("Rule 15(c) . . .  require[s] notice of plaintiff's cause of

action, not simply notice of the accident.").  Due to the limited facts available, even Jackson is forced to admit that "discovery would be necessary to establish definitively when White-Hunt learned about the original complaint."  Pl.'s Opp'n at 13.  The Court declines to do so at this time, given that Jackson is unable to meet the third requirement of the relation-back doctrine, and will simply assume without deciding that White-Hunt received the requisite notice to fulfill this second requirement.

The third requirement under Rule 15(c) mandates that the newly named defendant must "know or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).  The parties hotly contest this factor, but the Court finds that Jackson fails to show both that the omission of White-Hunt from the original complaint was a "mistake," and that White-Hunt "knew or should have known" that Jackson would assert a claim against him based on the information contained in the original complaint.  Accordingly, White-Hunt cannot rely on the relation-back doctrine to cure his otherwise time-barred pleading.

This Circuit has adopted a "straightforward reading" of the "mistaken identity" requirement of Rule 15(c)(1)(C), recognizing that the relation-back doctrine is intended to serve as a name-correcting amendment to "avoid the harsh consequences of a mistake that is neither prejudicial nor a surprise to the misnamed party."  *Rendall-Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1997); *see also* Fed. R. Civ. P. 15 advisory committee note (acknowledging that Rule 15(c)(1)(C) deals with "the problem of a misnamed defendant").  But a name correction is not the kind of mistake Jackson attempts to remedy here.

To begin, the Court finds that Jackson did not delay in adding White-Hunt as a party as a result of a mistaken identity.  Indeed, the original complaint made direct reference to White-Hunt

and his role in the incident, yet he was not named as a party (either by name or as John Doe II), nor was there any indication Jackson intended to name him as a defendant. *See* Compl. ¶ 17 ("As someone who appeared to be *the Starbucks manager* approached Mr. Jackson, Starbucks employee [Washington] moved the manager out of the way; [Washington] then . . . pushed Mr. Jackson.") (emphasis added). This indicates that Jackson "had originally been under no misimpression about the function [White-Hunt] played in the underlying dispute," rendering Rule 15(c) unavailable. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 552 (2010); *Ferguson v. Loc. 689, Amalgamated Transit Union*, 626 F. Supp. 2d 55, 60 (D.D.C. 2009) (finding that the requirement of mistaken identity was not met where the plaintiff was obviously aware of the identity of the party at the time the original complaint was filed, as illustrated by multiple references to the entity in the original complaint). Based on this, the failure to name White-Hunt as a defendant in the original complaint cannot plausibly be construed as a case of mistaken identity, or an accidental "slip of the pen." *Rendall-Speranza*, 107 F.3d at 918–19.

Moreover, it appears far more likely that White-Hunt was only added as a defendant following Jackson's realization that recovery against Washington, the alleged perpetrator and only individual defendant named in the original complaint, would be impossible given that he passed away while this suit was pending. *See* Def.'s Reply at 11. This type of evidence of a recovery-motivated use of Rule 15(c) has been found to "counter[] any implication that [the plaintiff] had originally failed to name [the later-added defendant] because of any 'mistake concerning the proper party's identity,' and instead suggest[s] that [plaintiff] decided to name [the new defendant] *only after the fact in an attempt to ensure that the fee award would be paid*." *Krupski*, 560 U.S. at 552 (emphasis added). Taken together, the content (and lack thereof) in Jackson's original complaint and his subsequent conduct "compel the conclusion" that the

decision to omit White-Hunt from the original complaint "was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity" meaning the requirements of Rule 15(c)(1)(C)(ii) are not met. *Id.* at 552.

Jackson attempts to assert that he made an applicable mistake for Rule 15(c) purposes by failing to recognize that White-Hunt had acted in a negligent supervisory capacity—and thus could be named as a defendant— until counsel obtained White-Hunt's purportedly false incident report White-Hunt submitted to Starbucks. Pl.'s Opp'n at 14. But this makes little sense. The incident report does not describe any actions taken by White-Hunt during the alleged altercation that were later added to the amended complaint to support the claim of aiding and abetting a battery.[3] Moreover, it demonstrates a fundamental misunderstanding of the scope and purpose of the rule. Jackson's mistake, as he describes it, is not one about a party's identity, but rather a more fundamental error on the part of counsel to fully investigate the case and other liable parties. The D.C. Circuit considered this very issue in *Rendall-Speranza*, and concluded that "in the adversarial system of litigation the plaintiff is responsible for determining who is liable for her injury and for doing so before the statute of limitations runs out; if she later discovers another

---

[3] Jackson argues that White-Hunt's purportedly false report "evince[s] a state of mind warranting at least an inference this he was culpable personally." Pl.'s Opp'n at 14. To the extent that this is an argument that White-Hunt *must have* aided and abetted in the battery to warrant filing a report Jackson contends is false, and accordingly White-Hunt *must have* known he was liable to Jackson, these are huge logical assumptions to make. More importantly, it completely misunderstands the relevant standard and scope of Rule 15(c). The relevant inquiry is not whether the later-named defendant is or could have known he was liable to the plaintiff in some way. As the Supreme Court has detailed, the correct inquiry is whether a prospective defendant should have known of the possibility that he would be sued by the plaintiff *based on the original complaint*. *See Krupski*, 560 U.S. at 541. Other "[i]nformation in the plaintiff's possession"—such as the knowledge (or lack thereof) of the incident report here—"is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.* at 548 (emphasis added). As already established, the original complaint gave no indication White-Hunt would later be named as a defendant. Accordingly, the incident report has no bearing on this analysis.

possible defendant, she may not, merely by invoking Rule 15(c), avoid the consequences of her earlier oversight." *Rendall-Speranza*, 107 F.3d at 918–19 (finding that "an error of judgment about whether an employer is liable for the act of its employee is not 'a mistake' within the intendment of Rule 15(c)."). Consequently, Jackson has not properly alleged a pleading error such that this claim can relate back.

Furthermore, Rule 15(c) is also unavailable because the Court cannot reasonably conclude that White-Hunt "knew or should have known" that he would be named as a defendant in Jackson's suit based on the original complaint. Fed. R. Civ. P. 15(c)(1)(C)(ii); *see also Krupski*, 560 U.S. at 541. The original complaint named only Starbucks and Washington as defendants. Given that White-Hunt was named in passing in the complaint but *not* named as a culpable party, and that the original complaint did not include any aiding and abetting battery claim, there was no reason for White-Hunt to believe that he was an intended party at the time the original complaint was filed. Jackson does not point to any concrete evidence to argue to the contrary.

As a result, the Court concludes that White-Hunt had no reason to believe that he would be named as a defendant and furthermore that Jackson did not make a name correcting mistake in the first place, barring the application of the relation-back doctrine. Consequently, Jackson's battery claim against White-Hunt is untimely, and must be dismissed.

### C. Racial Discrimination: Section 1981 and the DCHRA

Jackson brings two final claims, pursuant to the DCHRA and Section 1981, stating that he was unlawfully denied service on the basis of his race in an act of intentional discrimination.[4]

---

[4] Jackson's DCHRA claim alleges that he was discriminated against not just due to his race, but also based on his personal appearance. Am. Compl. ¶¶ 78–79 (noting that "[a]t the time

Am. Compl. ¶¶ 76–89.  White-Hunt argues that these pleadings suffer from two fatal deficiencies.  He contends that Jackson has failed to plausibly allege that White-Hunt even participated in any discriminatory act against Jackson, and also that even if White-Hunt was involved in such an act, the amended complaint does not claim he acted with the required discriminatory intent.  Def.'s Mot. at 12, 14.  The Court disagrees, finding that the amended complaint properly states a claim of intentional discrimination against White-Hunt under both Section 1981 and the DCHRA.

### 1.  Section 1981

Section 1981 protects the right of all persons within the United States to make and enforce a contract free from racial discrimination—and thus prohibits refusals of service based on race.[5]  To establish a claim under Section 1981, a plaintiff is typically required to show that (1) he is a member of a racial minority group; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute.  *Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 44–45 (D.D.C. 2003) (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996)).  The first and third elements have been met here.  Jackson is an African American man, *see* Am. Compl. ¶ 85, and a refusal of service is a covered activity under the statute, *see* 42 U.S.C. § 1981 (defining to "make and enforce

---

of the incident, [Jackson] appeared physically in a manner that some might interpret as being indigent, homeless, or otherwise belonging to a protected group of vulnerable people in our society.").

[5]  The full text of Section 1981 reads as follows:  "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  42 U.S.C. § 1981(a).

contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.").[6] Accordingly, the only element in dispute is if Jackson has sufficiently alleged that White-Hunt intentionally discriminated against him on the basis of his race.

A review of the pleadings allows the Court to conclude that Jackson has stated a claim that White-Hunt was personally involved in the alleged discriminatory denial of service suffered by Jackson.  Even White-Hunt agrees that "a supervisor is liable under Section 1981 where he is personally involved in the alleged acts of discrimination."  Def.'s Reply at 7 (citing *Brown v. Children's Nat. Med. Ctr.,* 773 F. Supp. 2d 125, 136 (D.D.C. 2011) (requiring "an affirmative showing linking the individual defendant with the discriminatory action."); *see also Uzoukwu v. Metropolitan Washington Council of Gov'ts*, No. 11-cv-00391, 2016 WL 471269, at *2 (D.D.C. Feb. 8, 2016) (same).  Such personal involvement has been alleged here.  The amended complaint states that it was only upon White-Hunt's "instruction or with his encouragement" that Washington left his position manning the cashier to approach Jackson in a manner which "escalated the situation," shortly thereafter announcing that Jackson "gotta get out," and then he pushed Jackson to the ground.  Am. Compl. ¶¶ 26, 28, 86.  Jackson's allegation that Washington

---

[6] White-Hunt initially seemed to contend that no denial of service occurred in this case. Def. Mot at 15 n.7 ("the alleged facts show that the altercation occurred because the cashier instructed Mr. Jackson he had to get in line . . . no one was denying Mr. Jackson service at Starbucks.").  This is not an accurate reflection of the pleadings, given that Jackson has alleged that he was told by Washington, "he gotta get out," and was then pushed to the ground before he could complete his purchase, purportedly due to his race.  Am Compl. ¶¶ 8–35.  Giving all reasonable inferences to Jackson, as the Court must, this certainly appears to be a "complete" refusal of service.  Furthermore, Section 1981 also covers situations less severe than complete denials of service, such as when a proprietor "intentionally provide[es] lesser service" due to discriminatory animus.  *Mitchell*, 274 F. Supp. 2d at 47.  As a result, under either standard Jackson has alleged discrimination concerning a protected activity.  Tellingly, White-Hunt drops this argument in his reply.

took these actions upon White-Hunt's instruction or encouragement—an affirmative act by White-Hunt linking him to the denial of service— is enough to constitute his personal involvement in the alleged discriminatory act at issue.

After all but conceding that Jackson has indeed plead his affirmative personal involvement in the allegedly discriminatory actions taken against Jackson, *see* Def.'s Reply at 8, White-Hunt retreats to his next argument, contending that the claim still must be dismissed because "there is nothing to support an inference that [White-Hunt] harbored racial animus when he allegedly took those actions." *Id*. But this again mischaracterizes the facts as alleged in the pleadings.

It is useful to begin with a review of the proper pleading burden a plaintiff must meet to put forth a claim of intentional discrimination. It is undisputed that at the pleading stage, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Moreover, a plaintiff asserting a claim of intentional discrimination need only allege facts that "give[ ] [the defendant] fair notice of the basis for [the plaintiff's] claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Nanko Shipping, USA v. Alcoa, Inc*., 850 F.3d 461, 467 (D.C. Cir. 2017) (noting a plaintiff's Section 1981 discrimination claim pleading burden "is not onerous."). Consequently, "courts in this Circuit have consistently recognized the ease with which a plaintiff claiming discrimination can survive a motion to dismiss." *Apollo v. Bank of Am., N.A.*, 315 F. Supp. 3d 436, 438 (D.D.C. 2018) (citing *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011)).

Indeed, other courts in the D.C. Circuit have found plausible claims of intentional discrimination sufficient to survive a motion to dismiss in situations quite similar to the case at hand. For example, in *Bonner v. S-Fer Int'l, Inc*., an African American shopper brought a

Section 1981 claim challenging the behavior she experienced from sales associates when she attempted to shop at a Washington D.C. Salvatore Ferragamo store. *See* 207 F. Supp. 3d 19, 23 (D.D.C. 2016). The court there found that she had plead sufficient facts to support an inference of racially discriminatory intent by the store employees due to her allegations that she was "flippantly" asked if she was aware of an item's high price tag and then "rudely" asked if she was prepared to make a purchase, after which an employee "demand[ed]" that she leave the store. *Id.; see also Apollo*, 315 F. Supp. 3d at 438 (concluding that a complaint supported a "plausible inference of race discrimination" stemming from allegations of a "denial of bank services for false reasons, and an unceremonious removal from the bank's premises."). So too in the instant case Jackson was told that he had to pay for the dipped madeleine cookies he wished to purchase, and that he could not hold the item while he waited in line, Am. Compl. ¶¶ 19–21, and shortly thereafter was told that he had to leave the store—and was then physically injured when he did not immediately leave, Am. Compl. ¶ 28. If anything, the request to leave accompanied by a use of force—potentially made on White-Hunt's behest—makes an inference of discriminatory intent all the more salient here compared to the facts as plead in *Bonner*. Jackson has also plead—based on Starbucks's own corporate disclosures—that around the same time he experienced his alleged denial of service, that Starbucks employees in other stores around the country were treating customers in a discriminatory manner based on their race. Am. Compl. ¶¶ 56–58. This allegation, if presumed true, further strengthens the inference that Jackson was intentionally discriminated against here. Taking all of these facts together, the Court finds that Jackson has raised his "right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and has stated a plausible claim of intentional discrimination by White-Hunt. Accordingly, White-Hunt's motion to dismiss the Section 1981 claim is denied.

2.  DCHRA Intentional Racial and/or Personal Appearance Discrimination Claim

Jackson's final claim asserts that Defendants intentionally discriminated against him on account of his race and or physical appearance in violation of the DCHRA.  Am. Compl. ¶¶ 76–83.  The DCHRA makes it unlawful in the District to "deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations" either "wholly or partially" on the basis of, *inter alia*, "race, color, [or] personal appearance."  D.C. Code § 2-1402.31(a)(1).

White-Hunt again argues that the amended complaint fails to set out a plausible claim that White-Hunt intentionally discriminated against Jackson based on his race and or personal appearance.  But as the Court has already explained while conducting this same analysis in the context of Jackson's Section 1981 claim, *see supra* Section IV.C.1, that assertion is incorrect.  And because "[t]he legal standards applicable to race discrimination are the same under the DCHRA and [Section] 1981," *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 86 (D.D.C. 2006) (quoting *Fox v. Giaccia*, 424 F. Supp. 2d 1, 6–7 (D.D.C. 2006)), the Court need not conduct the same analysis twice.  Consequently, Jackson's DCHRA intentional racial discrimination claim also survives White-Hunt's motion to dismiss.

Jackson also brings a second DCHRA claim alleging that he was discriminated against on the basis of his personal appearance at the time of the incident.  While neither party devotes more than a cursory reference to this claim in the briefing, largely lumping it together with Jackson's racial discrimination claims, the Court finds that this claim is sufficiently alleged.  The amended complaint states that "[a]t the time of the incident, Mr. Jackson appeared physically in a manner that some might interpret as being indigent [or] homeless" and that Defendants went on to intentionally discriminate against him on the basis of his physical appearance by physically

threatening him and pushing him to the ground.  Am. Compl. ¶¶ 78–79.  As previously

discussed, *see supra* Section IV.C.1, these actions were allegedly committed by Washington with

White-Hunt's "instruction or with his encouragement."  Am. Compl. ¶¶ 26.  The amended

complaint also states that Starbucks employees have in the past "treated customers in a

discriminatory manner based on their personal appearance."  Am. Compl. ¶ 57.  Reading the

amended complaint liberally, as the Court must, these statements provide the required specificity

as dictated by Federal Rule of Civil Procedure 8 to give Defendants notice and thus make out a

claim that White-Hunt intentionally discriminated against Jackson on the basis of personal

appearance.  Both DCHRA claims, therefore, survive White-Hunt's motion to dismiss.

## V.  CONCLUSION

For the foregoing reasons, Defendant White-Hunt's motion to dismiss (ECF No. 32) is

**GRANTED IN PART** and **DENIED IN PART**.  An order consistent with this Memorandum

Opinion is separately and contemporaneously issued.


Dated:  April 8, 2021                                    RUDOLPH CONTRERAS
                                                         United States District Judge